Jami Jo ROSS, Plaintiff–Appellant,

v.

John David EVERHART, Sr., Brian Keith Everhart, Linda Schlax, and Glenda Metcalf, Defendants–Respondents.

No. 26730.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 30, 2006.

Motion for Rehearing or Transfer to Supreme Court Denied Feb. 21, 2006.

Application for Transfer Denied
April 11, 2006.

Lee Poppen, Kristoffer R. Barefield, Lathrop & Gage L.C., Springfield, MO, for appellant.

Robert S. Wiley, Crane, Joseph D. Woodcock, Aurora, MO, for Glenda Metcalf.

James H. Arneson, Springfield, MO, for Brian Everhart.

J. Martin Studer, Kimberling City, MO, for Linda Schlax.

JOHN E. PARRISH, Judge.

Jami Jo Ross (plaintiff) appeals a declaratory judgment rendered in an action she brought against Brian Keith Everhart and Linda Schlax (collectively referred to as defendants).[1] The petition sought determination that debts secured by real estate that would be distributed to plaintiff from a trust established by Elmer H. "Bud" Everhart (settlor) would be paid from trust assets; that the real estate would be distributed to plaintiff free of encumbrance. Plaintiff and defendants were beneficiaries of the trust.

The trial court found against plaintiff. It declared that an equitable lien would be imposed on the real estate to be distributed to plaintiff for debts secured by the real estate and for amounts the trust paid to preserve and protect the real estate prior to its distribution to plaintiff; that plaintiff took the real estate subject to encumbrances for debts incurred by settlor, as trustee, from Metropolitan National Bank (Metropolitan) and Citizens National Bank (Citizens). This court affirms in part, reverses in part, and remands with directions.

Settlor executed the Elmer H. "Bud" Everhart Trust in August 1998, together with a pour-over will. The will bequeathed all of settlor's personal property to plaintiff and Brian Keith Everhart, settlor's son. The trust was the remainder beneficiary.

The assets that were transferred to the trust at the time it was established consisted primarily of settlor's shares of stock in Image Builders & Associates, Inc., (Image Builders) and certain real estate located on Joe Bald Road in Kimberling City, Missouri (the Joe Bald property). The trust directed the trustee to distribute $250,000 to settlor's sister, Linda Schlax, and the Joe Bald property to plaintiff upon settlor's death. Remaining assets in the trust estate were to be divided between plaintiff and Brian Keith Everhart in the proportions stated.[2]

Settlor was named trustee. His sister and brother, Linda Schlax and John David Everhart, Sr., were named successor trustees. Settlor died on May 21, 2002, from injuries sustained in an automobile accident. Thereafter, Linda Schlax served as successor trustee. She resigned. Following her resignation as trustee, John David Everhart, Sr., served in that capacity. He resigned as trustee and in November 2003, Glenda Metcalf, Public Administrator of Stone County, Missouri, was appointed successor trustee. Ultimately, a dispute arose over payment of obligations secured by the Joe Bald property. That dispute prompted plaintiff to bring this action.

Settlor purchased the Joe Bald property in 1996. He conveyed the property to the trust in August 1998 when the trust was

---

1. Plaintiff also sought declaratory judgment against Image Builders & Associates, Inc. in Count II of the petition she filed. Count II was settled and dismissed pursuant to a stipulation by the parties. The disposition of Count II is not a part of this appeal.

2. The trust stated that the remainder of the trust estate was to be divided "into separate shares, creating one such separate share for [plaintiff], if living, equal to one-quarter (1/4) of the Trust Estate, and creating a separate share equal to three-quarters (3/4) of the Trust Estate for [settlor's] son, BRIAN KEITH EVERHART, if living."

established. Settlor was in the process of constructing a residence on the property at that time. The residence that was being constructed was intended to be the home of settlor and plaintiff.

On March 4, 1999, settlor executed a promissory note to Metropolitan for a construction loan in the amount of $340,000. On November 29, 2001, he executed a promissory note to Citizens to establish a home equity credit line in the amount of $160,000. The loan from Metropolitan was payable by 119 monthly payments in the amount of $2,496.80, and a final payment of $300,826.29 that would be due March 4, 2009. Both promissory notes were executed by settlor in his capacity as trustee. They were secured by deeds of trust executed on behalf of the trust on the Joe Bald property.

Plaintiff and settlor moved into the residence on the Joe Bald property on Memorial Day weekend in 1999. The property was appraised July 6, 2000. The appraised value was $807,000.

Plaintiff continued to live in the residence on the Joe Bald property after settlor's death. She made no payments on the Metropolitan loan or the Citizens loan; neither did she pay property taxes on the real estate or premiums for homeowners insurance. Plaintiff had been employed by Image Builders prior to settlor's death. Her employment was terminated after he died.

The trust continued to pay the payments that became due on the Metropolitan and Citizens promissory notes. It also paid the property taxes and homeowners insur-

ance premiums for the Joe Bald property. The trust paid $27,464.80 on the Metropolitan loan and $7,930.60 on the Citizens loan from July 2002 to May 2003. It paid the 2002 property taxes in the amount of $2,182.64 and $3,646.70 homeowners' insurance premiums. In May 2003, John David Everhart, Sr.,[3] as trustee, ceased making payments on expenses related to the Joe Bald property and conveyed the property, as trustee, to plaintiff.

After conveying the real estate to plaintiff, Mr. Everhart requested that a successor trustee be appointed. Glenda Metcalf was appointed. The trust ceased making payments on the notes that were secured by deeds of trust on the Joe Bald property.

In July of 2003, plaintiff filed for bankruptcy pursuant to Chapter 13 of the Bankruptcy Act. Citizens initiated foreclosure proceedings. The Joe Bald property was scheduled to be sold at foreclosure in December 2003. That foreclosure was prevented by the trustee paying $19,353.87 to Metropolitan and $25,000 to Citizens. A subsequent foreclosure was scheduled to take place in July 2004. Payments were again made on the notes held by Metropolitan and Citizens from the trust in order to stop the foreclosure. Metropolitan was paid an additional $4,993.60 and Citizens an additional $10,000. At the time of trial, the trust had paid a total of $117,125.09 toward the notes secured by the Joe Bald property for principal and interest and for taxes and insurance.[4]

---

3. Mr. Everhart is identified in the trial transcript as "David Everhart;" however, when asked to state his full name, he replied, "John David Everhart, Sr."

4. On August 4, 2004, the trust bank account had a balance of $114.05. On the day of trial the trust received a check from Image Build-

ers as part of the settlement of Count II, see n. 1, *supra*, in the amount of $135,000. Image Builders executed a promissory note in the amount of $500,000, payable to the trust, in ten installments of $50,000 plus interest in addition to the amount paid the date of trial.

■ Plaintiff's first point on appeal argues that the trial court erred in determining plaintiff is responsible for repayment of the two encumbrances on the Joe Bald property that were distributed to her and in placing an equitable lien on the property; that the trial court erroneously declared and misapplied the law to the facts of the case. Plaintiff contends the trust "unambiguously provided that the property at issue was to be disbursed to [plaintiff] outright, the notes and Deeds of Trust were executed by [settlor] as Trustee of his Trust only, and the Deeds of Trust at issue were placed upon the property subsequent to the execution of the Trust bequeathing said property to [plaintiff], and therefore must be satisfied by Trust funds prior to the disbursement of the property to [plaintiff]. . . ."

The trial court entered written findings of fact and conclusions of law. Its conclusions of law include:

> D. On its face, the trust agreement does not instruct the trustee to pay the obligations in question from trust assets other than the lake property in question. Nor does it state that the lake property is to be distributed to [plaintiff] free and clear of any debts, liens or encumbrances. The trust agreement gives the trustee the sole discretion as to the payment of certain debts and claims. The successor trustees have taken the position that the two mortgage debts in question are to be paid by [plaintiff] and should not be paid from other trust assets. Accordingly, it can be determined without resort to any extrinsic evidence that Ms. Ross takes the [Joe Bald property] subject to the encumbrances.

---

**5.** § 456.810.3(2), RSMo 1994, was in effect at the time the trust in the case before this court was executed and at the time of settlor's death. That statute was repealed in 2001;

The Eastern District of this court addressed the question of payment of mortgages on trust property in *Reisenleiter v. Reisenleiter,* 926 S.W.2d 914 (Mo.App. 1996).

Generally, if a settlor fails to make an express provision regarding the payments of mortgages on trust property, the settlor intends the mortgage to be paid out of trust proceeds. *See* § 456.810.3(2), RSMo 1994;[5] Bogert, *Trusts and Trustees 2d Edition Revised,* § 808, 1981; Fratcher, *Scott on Trusts,* § 347.2, 1989.

*Id.* at 917.

The trial court found that because the trust gave the trustee sole discretion to pay certain debts and claims, the trustee was not required to pay the encumbrances on the Joe Bald property from trust assets; that the trustee could distribute the property to plaintiff subject to the deeds of trust that encumbered the real estate. The provision of the trust agreement on which the trial court based its finding was Article IV, paragraph B. It provides:

> The Trustee may, in Trustee's sole discretion, pay any debts, claims or expenses owing by the [settlor] at the time of or arising on account of the [settlor's] death as well as any legacies set forth in [settlor's] Will, or any Codicil thereto, to the extent [settlor's] estate subject to probate is not sufficient to pay any such debt, claim or legacy provided, however, that this provision shall not be construed to vest in any creditor or any third party any right, title or interest in or to any part of the principal of the Trust Estate. All other provisions of this Agreement for the distribution of the income and principal of the Trust Estate shall, with-

---

however, the language in it is now found at § 469.453.1(3). *See* Mo.Laws 2001, H.B. No. 241, § A.

out further reference, be subject to this paragraph.

The trust provision on which the trial court relied does not relate to the debts secured by the deeds of trust that encumber the Joe Bald property. Those debts were debts of the trust, not debts of settlor. Settlor executed the promissory notes and the deeds of trust as trustee, not individually. Each document denotes the maker or grantor to be "ELMER H. EVERHART, TRUSTEE OF THE ELMER H. EVERHART TRUST DATED AUGUST 5, 1998." The authority granted the trustee by Article IV, paragraph B, does not apply to the debts that encumbered the Joe Bald property in that those debts were not debts "owing by the [settlor]." They were debts of the trust. They were payable from trust assets. *Reisenleiter, supra.*

■ This court has found no authority, nor have the parties cited any, for construction of provisions of a trust in circumstances in which there are directions for distribution of property encumbered as security for trust indebtedness without directives in the trust document regarding responsibility for payment of the indebtedness. However, the rules of construction are generally the same for construing both wills and trusts "always keeping in mind that '[t]he paramount rule of construction in determining the meaning of a trust provision [to which all technical rules must give way], is that the intent of the grantor is controlling.'" *Blue Ridge Bank & Trust Co. v. American Ass'n of Orthodontists Foundation,* 106 S.W.3d 543, 548 (Mo. App.2003), *quoting A.G. Edwards Trust Co. v. Miller,* 59 S.W.3d 550, 552 (Mo.App. 2001).

Section 474.450[6] addresses distributions of encumbered property in decedents' estates. It distinguishes between indebtedness incurred prior to the execution of a will and indebtedness incurred after the execution of a will. It states:

1. A charge or encumbrance upon any real or personal property, for the purpose of securing the payment of money or the performance of any covenant or agreement, is not deemed a revocation of any will, relating to the same property, previously executed.

2. When any property is specifically devised and at the time of the testator's death is subject to a mortgage, pledge, or other lien created prior to the execution of the will or created by a mortgage, pledge, or other lien executed after the execution of the will as a renewal, or extension, or refinancing of the debt created prior to the execution of the will, the devisee shall take the property so devised subject to the charge or encumbrance unless the will provides expressly or by necessary implication that such mortgage be otherwise paid, *but if the mortgage, pledge or other lien was created after the execution of the will the devisee shall take the property exonerated from the encumbrance unless it appears from the terms of the loan agreement or from the circumstances surrounding the loan transaction that the testator intended that the encumbrance should be paid out of the encumbered property rather than from his general estate.* [Emphasis added.]

The encumbrances placed on the Joe Bald property to secure indebtedness to Metropolitan and Citizens were created by deeds of trust executed subsequent to the establishment of the trust and subsequent to the direction that the property be distributed to plaintiff upon settlor's death.

---

6. Unless stated otherwise, references to statutes are to RSMo 2000.

The liens created by the deeds of trust were not created as part of the refinancing of debts created prior to the establishment of the trust. Absent the appearance from the terms of the loan documents or the surrounding circumstances that settlor intended the encumbrances to be paid from the encumbered property rather than from other trust assets, applying the principles of construction set forth in § 474.450.2, plaintiff would take the Joe Bald property free from encumbrance.

The trial court found that the circumstances surrounding the incurring of the debts evidenced settlor's intent that those encumbrances be paid out of the encumbered property. The trial court reached that conclusion on the bases that "[i]f settlor had intended that the lake property be distributed to [plaintiff] free and clear … he could have so stated"; that settlor had "mentioned" to his sister that "[plaintiff] would have an equity in the property of $400,000–$500,000 which would enable her to live comfortably upon sale of the property"; and that "[settlor] told his sister that he had given enough to [plaintiff] and her family."

The trial court's conclusion that failure to state that the indebtedness should be paid from assets other than the Joe Bald property connotes that payment was not to be made from other trust assets is not consistent with Missouri law. Such a conclusion is contrary to the principles established in § 474.450.2 that differentiate between debts acquired prior to execution of a testamentary document and those acquired after execution of such a document. As previously noted, generally the same rules apply to construing trusts as construing wills. *Blue Ridge Bank and Trust Co., supra.*

■ Further, the trial court's conclusion was based on matters outside the four corners of the instrument the trial court was to construe. "[A]bsent any ambiguity in the terms of a legal instrument, the intent of its maker, including the intent of a testator or the settlor of a testamentary or *inter vivos* trust, is to be ascertained from the four corners of the instrument without resort to parol evidence as to that intent." *Commerce Bank, N.A. v. Blasdel,* 141 S.W.3d 434, 444 (Mo.App.2004). "[B]ecause the [settlor] is presumed to know the legal effect of the language used in the trust instrument, extrinsic evidence, including the [settlor's] own statements, regarding the [settlor's] intentions is normally inadmissible." *Id.*

Trust assets consisted primarily of the Joe Bald property and shares of stock in Image Builders. There were three shareholders in Image Builders prior to settlor's death. They had a stock purchase agreement. It provided that upon the death of a shareholder, the surviving shareholders would purchase the deceased shareholder's shares of stock. It set the purchase price of the shares to be acquired as the value of "the then life insurance policies purchased by [Image Builders] on the lives of Gerald Beard, Dave Everhart, and [settlor]." Ten per cent of the price was to be paid in cash. The balance was to be represented by a promissory note payable in equal installments over a term not to exceed ten years. The purchase price for the shares of stock settlor included in the trust was agreed upon as $650,000 as part of the settlement of Count II of the petition for declaratory judgment. *See* n. 1, *supra.* The trust was paid $15,000 in July 2004 and $135,000 the day of trial. The balance was payable to the trust. The trust was provided substantial assets with which to meet the demands placed upon it.

Defendants contend the agreement to structure the payment of the purchase price for settlor's stock over ten years was indicative of an intent that the trust would

not pay it debts prior to distribution of the Joe Bald property. Although payment of the purchase price over a period of ten years complicates distribution, it does not require the conclusion that settlor intended plaintiff to have responsibility for payment of the debts secured by the Joe Bald property. Rather, it evidences intent for the trust to continue for the time the other shareholders of Image Builders were required to pay the balance of their note. The trust could make payments on the debts secured by the Joe Bald property each year as it received the payments for the Image Builders shares. The payments due each year from the Image Builders shareholders include interest at a rate of prime plus one percent.

Another factor on which the trial court relied was that settlor had applied for a life insurance policy as "mortgage protection" at one point; that he ultimately declined the policy. The application included a notation: "Note: [Settlor] and his fiancé, [plaintiff], have built a home together which is valued at over $500,000. The mortgage on this home is $350,000. This policy is intended to provide mortgage protection for [plaintiff] in the event of [settlor's] untimely death. This is why fiancé is the beneficiary."

Although settlor ultimately declined the policy, he subsequently purchased a $250,000 policy that was paid to the trust, a $300,000 policy payable to Image Builders, and a $50,000 policy payable to plaintiff. The trial court concluded that the application for the $350,000 policy evidenced that settlor did not intend for the mortgage to be paid from trust assets. Equally and perhaps more compelling, would be the explanation that the $250,000 policy was to pay the distribution to be paid to settlor's sister and the additional policies were to fund other financial re-

sponsibilities of the trust, including obligations to Metropolitan and Citizens.

■ The intentions of settlor are to be gleaned from the trust instrument and not from the resulting distributions achieved pursuant to its terms. *Boone County Nat. Bank v. Edson,* 760 S.W.2d 108, 111 (Mo. banc 1988); *Commerce Bank, N.A. v. Blasdel, supra,* at 445. Plaintiff is entitled to distribution of the Joe Bald property exonerated from encumbrance. The trust is responsible for payment of the debts secured by the property. The trust was not, however, responsible for the maintenance of the property after its distribution. It is entitled to reimbursement from plaintiff for taxes and insurance paid after that time.

Point I is well-taken. The judgment is reversed as to its determination that the property is distributed to plaintiff subject to payment of the encumbrances secured by it. The judgment is affirmed as to the determination that plaintiff is responsible for insurance and property taxes subsequent to distribution of the property.

Point II argues that the trial court erred in considering and relying upon extrinsic evidence to determine settlor's intentions "because such evidence was inadmissible in that the [settlor's] intent could unambiguously be determined by reference to the trust instrument, or alternatively, by reference to the terms of the loan agreement and the circumstances surrounding the loan transaction (as directed by RSMo. § 474.450), therefore rendering all other extrinsic evidence of the [settlor's] intent inadmissible." Point II is rendered moot by reason of the disposition of Point I.

The judgment is reversed as to the determination that plaintiff shall take the Joe Bald property subject to encumbrances securing debts owed Metropolitan and Citizens. It is reversed as to the imposition of an equitable lien for those purposes. The

part of the judgment declaring plaintiff liable to the trust for property taxes and insurance paid on and for the Joe Bald property since its distribution to plaintiff is affirmed. The case is remanded. The trial court is directed to enter judgment consistent with this opinion.

RAHMEYER and GARRISON, JJ., concur.